[L. A. No. 12420.   In Bank.—April 1, 1932.]

MIZPAH INVESTMENT CORPORATION (a Corporation), Appellants, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

Winslow P. Hyatt for Appellants.

Erwin P. Werner, City Attorney, Frederick von Schrader, Assistant City Attorney, and Sam H. Erwin, Deputy City Attorney, for Respondents.

SEAWELL, J.—Appeal from a judgment of nonsuit in a proceeding to restrain the defendant City of Los Angeles and its board of public works from making sales of certain described real property belonging to plaintiffs and from issuing bonds to represent any assessments made under and by virtue of city ordinance No. 47159, N. S., adopted by the city council of the City of Los Angeles on October 8, 1923, and approved by the mayor of said city October 10, 1923. Said real property is situated within the district benefited by the improvement.

The proceedings in question were initiated by said city under the authority of the provisions of an act entitled "An act to provide for the acquisition by municipalities of land for public park *or* playground purposes by condemnation and for the establishment of assessment districts and the assessment of property therein, to pay the expense of acquiring and improving such land." (Stats. 1909, p. 1066; Stats. 1913, p. 414; Stats. 1921, p. 349.) The word *or* is underscored to distinguish it from *and*. Plaintiffs own a large number of lots and parcels of land which are embraced within the limits of said assessment district upon which the total sum of the assessments, including penalties for delinquencies and costs, aggregate $8,072.42. None of the plaintiffs' lands was sought to be taken by condemnation, but other lands within the district were acquired by condemnation proceedings.

Plaintiffs urge and rely upon the following major grounds for a reversal of the judgment: (1) The sufficiency of the evidence to pass a nonsuit: (2) that the ordinance of intention, No. 47159, N. S., as originally enacted by the city

council of the City of Los Angeles and approved by the mayor of said city, was, after its passage, changed by some person not authorized to change it in a material respect, and said ordinance was not thereafter re-adopted or re-enacted by said council; (3) that certain real property owned by one Wm. H. DeWolfe, and which was included in the condemnation proceeding and for which an award was made in the sum of $125,000, had been actually purchased by the city some months before the proceedings were initiated to create said assessment or improvement district, and therefore said sum of $125,000 should not have been included as a charge against the real property of the district inasmuch as the city had acquired said real property prior to the formation of said district; (4) the exclusion by the court of certain evidence offered by plaintiffs as tending to impeach the judgment entered in said condemnation proceedings with respect to the question of ownership of said DeWolfe property at the time said condemnation proceedings were commenced.

The order granting the motion for a nonsuit and the judgment entered thereon are so closely correlated with the obliteration of certain words from the title and from the body of the ordinance declaring the council's intention to establish the district, and which obliterations are alleged to have been made after the adoption of said ordinance, that both questions will be considered together. Said ordinance was typed and a photostatic copy showing the changes and alterations made therein is included in the reporter's transcript. The title as originally typed read:

"Ordinance No. 47159

"(New Series.)

"An ordinance declaring the intention of the City Council of the City of Los Angeles to order the acquisition by condemnation for public park [and playground] purposes, of certain lands situated in the City of Los Angeles, County of Los Angeles, State of California, being in the Arroyo Seco, between avenue 58 and Pearl Street."

The bracketed words [and playground] are the words which were obliterated from the title and from three other places in the body of the ordinance where they had originally followed the words "public park" as defining the purpose

of the council in creating the district. The obliterations were made by drawing a pen heavily inked through said words and the obliteration is so complete as to make it almost impossible to discern the words originally typed. Mr. Keith's testimony makes it clear that the words stricken out were "and playground". Other alterations appear to have been made in said ordinance but no objection is raised as to them. There is no mystery as to who made the obliterations, as on the margin of the page opposite each change appear the letters "D. M. K." which are the initials of Donald M. Keith, deputy city attorney of the City of Los Angeles. He testified that he made the alterations or obliterations herein discussed, as well as others, and placed his initials as witness thereto at the time he made them. An important question bearing upon the court's ruling granting the motion for the nonsuit is whether the changes were made in said ordinance before or after its adoption by the council. Plaintiffs stress the importance of this issue and contend that the evidence, much of which consists of official records, tends to establish the claim that said changes were made after the ordinance had been enacted. The city does not claim that there was any attempt to remodel or re-enact said ordinance into its present form. The burden of proving facts which would directly or inferentially justify the conclusion that an officer of said city altered said ordinance after its passage was upon plaintiffs. The following presumptions have the weight of evidence unless controverted by other evidence:

"1. That a person is innocent of crime or wrong; . . .

"15. That official duty has been regularly performed: . . .

"33. That the law has been obeyed. . . . " (Sec. 1963, Code Civ. Proc.)

The above presumptions are important in view of sections 113 and 114 of the Penal Code, which make every officer, and every person not an officer, who mutilates, defaces or falsifies any record placed in his hands for any purpose, guilty of a felony. Deputy City Attorney Keith, called as a witness by the plaintiffs, testified that said ordinance as originally drafted was placed in his hands, as shown by the record, on October 4, 1923, four days before its adoption by the council. The witness was called upon to testify to dates and matters which had occurred six or seven

years prior to the day on which he gave his testimony. He assumed from the date of his approval of the ordinance, to wit, October 4th, that he made the alterations and obliterations as initialed by him on the same day that he gave it his approval for passage. Upon the passage of an ordinance the original is turned over by the city clerk to the printer. The evidence conclusively shows in the instant case that the original ordinance went into the printer's hands from which the publications were made. This being so, the probability would seem to be that Mr. Keith never saw it again after he changed and initialed it, thereby approving it for adoption by the council. The witness was interrogated by Mr. Hyatt, plaintiffs' attorney, as follows: "Q. After it [ordinance] passed your hands, where was it delivered by you? A. The ordinance was prepared in my office and approved by me and sent to the city clerk. Q. At the time that it was prepared in your office, these erasures were not there, were they? A. Yes, sir. Q. At that time in October? A. I presume so; yes, sir. Q. Do you mean to swear that your initials were put on there October 4, 1932? A. Why, I can't say, so far as the date is concerned. That ordinance may have been approved on the 4th and not sent to the clerk's office, you see, until some subsequent time. The Court: But the erasures were in at the time it was approved, is that it? A. The erasures were in at that time—not necessarily, of course—I may have made the erasures subsequent to the approval, but probably about that time. Q. By Mr. Hyatt: And isn't it a fact, Mr. Keith, that it was made after the publication on the 16th day of October? A. Why, I don't know."

Cross-examination by Mr. Erwin: "Q. Do you know whether or not these changes were made before or after it passed the council? A. Before. Q. Before it passed the council? A. Yes, sir."

While the witness was not able to definitely fix dates from memory in a matter so ordinary as the subject in controversy, he did recall incidents and events which enabled him to say definitely that the alterations shown upon the face of the ordinance were made before its passage.

Omitting from the case any consideration of the weight of presumptions in support of the validity of said ordinance, it could not be held from the evidence of the person who

actually made the changes that they were made subsequent to the adoption of said ordinance. The facts would impel a contrary finding. Other officers of the city were called by the plaintiffs, but their testimony presented nothing of a substantial character in support of the error claimed to have been committed by the trial court in granting the motion for nonsuit.

The ordinance was published on October 16, 1923, for the first time in the "Los Angeles Daily Journal," the official newspaper of the City of Los Angeles. In that issue of the "Daily Journal" the ordinance was printed as it was originally typed, without change or alteration of any kind whatever. No affidavit as to the publication of said ordinance on October 16th appears to have been made by the publisher of said official newspaper. Three days thereafter, to wit, October 19, 1923, a republication, or, more strictly speaking, the publication of said ordinance appeared in said newspaper, agreeing in language, substance and matter with the ordinance as changed by the deputy city attorney in the respect testified to by him. No satisfactory explanation was given by the publisher of the newspaper, or anyone else who was in a position to know, why the first publication appeared as it did. One or two theories are advanced as to the manner of its occurrence, but they amount to no more than speculative theories which do not as much as controvert the presumption which supports the validity of an ordinance regular upon its face. Besides the testimony of the deputy city attorney other city officials testified that the ordinance was placed in its present form by the deputy city attorney before it was sent to the council for passage. ■ It was not for the city in the first instance to prove the validity of the ordinance. The burden of establishing its invalidity was upon the challengers. We think the court did not err in granting the motion for nonsuit. ■ There are other reasons which would make us pause before condemning the ordinance in question. It is very doubtful if the changes complained of are of sufficient importance in substance as to justify a court in condemning the ordinance on the ground of a material departure from the statute. ■ Section 32 of said act provides: "The provisions of this act shall be liberally construed to promote the objects thereof. This act may be designated and referred to as the *park and play-*

*ground* act of 1909.' '' (Italics ours.) Plaintiffs contend that because the act provides that land may be acquired for ''public park *or* playground purposes'' it could not be acquired for ''public park *and* playground purposes''. With this contention we cannot agree. The purposes are practically the same. A public park is in effect a playground, and both are acquired for recreational purposes. There is strong reason to believe that the two words of designation were used to include in a most comprehensive sense all such recreational uses or purposes as are commonly understood by the public. It is common knowledge that all public parks are also used as playgrounds. The act designates itself as the ''park and playground act''. The ordinance would not have been invalid had it retained the deleted words ''and playground''. Plaintiffs concede that an ordinance designating the purposes of acquiring land for a ''public park'' would be within the statute. We are of the view that any other construction than the one we have placed upon the act would be to narrow its purpose and impede rather than promote its objects.

We would not be inclined to invalidate the assessment district for another reason. The district was created approximately four years before the appellants made any objection to its organization or to the regularity of the assessments which they now contest. They were served in due time with notice as required by the act, by publication, posting and by mailing. At no time did they appear to protest the formation of the district or the fairness of the assessments until some time after they had been levied. They then made tender of $3,775 in full satisfaction of said assessments, claiming that the $125,000 represented by the DeWolfe purchase, hereafter discussed, should not have been included as an item of costs against the real property of the district. During this period of four years the council and the public, including the plaintiffs, had treated said ordinance as a valid, existing ordinance. The council, upon the faith of its validity, which passed unchallenged, brought suits and transacted business involving property rights. Its adoption was ratified in many ways, if such be possible, by a long course of municipal transactions. In the light of the facts shown it would require a clearer lack of jurisdiction

on the part of the city to proceed under said ordinance than plaintiffs have presented upon this appeal.

The next objection made by plaintiffs is as to the DeWolfe purchase. The mayor and city council having in contemplation the creation of said district made overtures to DeWolfe to purchase a body of land owned by him and situated within the boundaries of the proposed district, the acquisition of which was necessary for the purposes of the district. The mayor in the name of the city of Los Angeles, on June 15, 1923—some three months before the adoption of the ordinance declaring the intention of the city to create said district—entered into a memorandum agreement of option in consideration of the sum of $10 with DeWolfe to purchase the lots and pieces of land described in the option agreement at the price of $125,000. Before the option expired another agreement was similarly entered into by said city, executed by the mayor. This second agreement was executed on February 1, 1924, approximately three months after the adoption of said ordinance. This second agreement *inter alia* provided that the city would pay to DeWolfe the sum of $125,000 for said lands, $75,000 upon demand, ''as a part of the principal consideration to be paid to said second party [deWolfe] in the condemnation proceedings which will be instituted under the provisions of the 'Park and Playground Act' . . . and when any judgment of condemnation shall have been secured by said first party [City] then upon the payment of the difference between the sum found in any such judgment and the sum of $75,000, said second party shall cause to be entered in due form a complete satisfaction of judgment in such condemnation action''.

It was further provided in said second agreement, ''that the payment of the said sum of Seventy-five thousand ($75,000.00) Dollars at this time is in the nature of a loan by said 'First Party' to the Assessment District, which will ultimately be assessed to pay the judgment in the condemnation action hereafter to be instituted, and that nothing in this Agreement shall be construed to prevent the assessment and collection from said Assessment District of the entire sum of any such Judgment as provided in the said 'Park and Playground Act,' hereinabove mentioned.''

Ordinance No. 47865, N. S., was subsequently adopted in due order, directing the institution of a condemnation proceeding against the real property described in said option, including other real property not material to the issues of this proceeding. The action which resulted in the condemnation of said DeWolfe real property was entitled *The City of Los Angeles* v. *Frank Leeper et al.*, Superior Court No. 145852. The record in that case is not before us. It was stipulated at the trial of the instant case that the trial court might have access to the files of the Leeper et al. proceedings in considering the instant case. It was in the latter case, apparently, that the compensation for the taking of the DeWolfe real property was fixed at $125,000, the exact amount named in the option of purchase.

We are unable to follow plaintiffs in their contention that said sum of $125,000, fixed by the order of condemnation as damages to be paid to DeWolfe as the owner of said property, because of the steps taken to acquire it, should not be included in estimating the expense of the improvement to the district. Any steps taken by the city in advance of the adoption of the ordinance of intention which might inure to its benefit could not have prejudiced the plaintiffs. The price of the lands was more than likely held down by said option agreements. But be this as it may, the land was condemned in the manner provided by the Park and Playground Act. Its value was determined according to the rules and standards of the law and that is all that is required.

Plaintiffs suggest that they were not made parties in the Leeper case and therefore are not bound by that judgment. The notices required by section 9 of the Park and Playground Act were given in the manner provided by law, to all persons, including plaintiffs, owning or having an interest in any property within the assessment district. This is not disputed. Plaintiffs are, therefore, bound by the proceedings taken. (*City of Los Angeles* v. *Glassell*, 203 Cal. 44 [262 Pac. 1084].)

From what has been said it is not necessary to discuss the exclusion by the court of certain oral evidence offered by plaintiffs and directed against the judgment in the Leeper case, as it was but a collateral attack made upon a judgment

rendered in a case in which plaintiffs made no appearance. Sufficient record evidence, however, was introduced in the instant case to show that said judgment was impregnable to attack upon the grounds urged.

The judgment is affirmed.

Langdon, J., Curtis, J., Preston, J., Shenk, J., and Waste, C. J., concurred.